UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

| | | |
|---|---|---|
| **BRANDON BINION** | : | **Case No.** |
| | : | **Judge** |
| -and- | : | |
| | : | |
| **ALYSSA BINION** | : | |
| | : | |
| | : | |
| Plaintiffs | : | **COMPLAINT** |
| | : | |
| -v- | : | |
| | : | |
| **CLEAN HARBORS ENVIRONMENTAL** | : | |
| **SERVICES, INC.** | : | |
| **42 Longwater Drive** | : | |
| **Norwell, MA 02061** | : | |
| | : | |
| <u>Serve:</u>  **C T CORPORATION SYSTEM** | : | |
| **306 W Main St.** | : | |
| **Suite 512** | : | |
| **Frankfort, KY 40601** | : | |
| | : | |
| -and- | : | |
| | : | |
| **JOEL L. ROGERS** | : | |
| **56 Banister Drive** | : | |
| **Charleston, WV 25313** | : | |
| | : | |
| <u>Serve:</u> **KENTUCKY SECRETARY** | : | |
| **OF STATE (KRS 454.210(3)(c))** | : | |
| | : | |
| Defendants | : | |

*** *** *** *** *** ***

Come the Plaintiffs, Brandon Binion and Alyssa Binion, by counsel, and for their Complaint and causes of action against the Defendants, hereby state and allege as follows:

**INTRODUCTION**

1. On May 15, 2019, Brandon Binion and his sister, Alyssa, were heading home with

the right of way when a loaded and poorly maintained Clean Harbors Environmental Services, Inc. (hereinafter "CH") dump truck sped through a stop sign and slammed into them. Brandon was life-flighted to the nearest trauma center with both of his legs shattered and his right ankle crushed. Alyssa was also rushed to the hospital with a shattered knee, broken toes and internal hemorrhaging. This is a lawsuit for damages against CH and their driver for their reckless conduct which led to these catastrophic damages.

## PARTIES

2. Plaintiffs Brandon and Alyssa Binion are both residents of Boyd County, Kentucky.

3. CH is a nonresident motor carrier transacting business in Kentucky. Its principal office and headquarters are both located at 42 Longwater Drive, Norwell, Massachusetts 02061. Its statutory agent for process in Kentucky is C T Corporation System located at 306 West Main Street, Suite 512, Frankfort, Kentucky 40601.

4. Defendant Joel Rogers, who was the driver of the CH dump truck, resides at 56 Banister Drive, Charleston, West Virginia 25313.

## JURISDICTION AND VENUE

5. There is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs; consequently, this Court has original jurisdiction over Plaintiffs' claims and causes of action against CH and Joel Rogers pursuant to 28 U.S.C. § 1332.

6. This Court has personal jurisdiction over CH pursuant to KRS § 454.210(2)(a)(1) and other applicable law, as CH transacts business within Kentucky and is registered to do so with the Kentucky Secretary of State.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b); as the incident giving

rise to this action occurred in Boyd County, Kentucky.

## FACTS

8. At all times relevant hereto, Rogers was either employed by or was an agent of CH.

9. CH is a motor carrier engaging in interstate commerce registered with the U.S. Department of Transportation under DOT Number 180743.

10. CH engages in the transport of dangerous and hazardous materials throughout North America. As such, they are well aware of their obligation to assure that, when being transported in commercial vehicles, these materials are only transported in such vehicles which meet and exceed the minimum safety standards set forth within the Federal Motor Carrier Safety Regulations (FMCSR's).

11. CH has a duty to comply with the Federal Motor Carrier Safety Regulations so as to protect the general public, including the Plaintiffs, from the unsafe operation of commercial vehicles.

12. CH routinely disregards its obligations for assuring that its fleet vehicles meet minimum federal safety standards for braking.

13. Between April 27, 2017 and April 25, 2019, DOT roadside inspections of CH fleet vehicles resulted in at least 365 violations related to braking.

14. CH has an overall systemic vehicle maintenance problem.

15. Between April 27, 2017 and April 25, 2019, DOT roadside inspections of CH fleet vehicles resulted in at least a minimum of 1037 violations related to vehicle maintenance.

16. In addition to assuring that their commercial vehicles meet the safety and inspection standards under the FMCSR's, CH is aware of its obligation to assure that they monitor their drivers to assure that the drivers similarly meet safety and qualification standards under the

FMCSR's.

17.   CH has a pattern and practice of placing unsafe drivers into trucks and onto public roadways.

18.   Between April 27, 2017 and April 25, 2019, DOT inspections of CH drivers resulted in at least 275 violations related to unsafe driving, driver fitness and hours of service compliance.

19.   Despite their respective obligations, CH chose to dispatch a load on May 15, 2019 which spanned more than 50 miles and two states in a dump truck which had ongoing mechanical issues that rendered the truck unable to safely navigate the route, and Rogers chose to drive this truck rather than keep it out of service.

20.   Upon information and belief, the subject CH dump truck went into a repair shop due to a tire blowout either on or within the days leading up to the subject crash.

21.   CH and Rogers knew or should have known at all times relevant herein that a tire blowout carries the potential to render a braking system out of service.

22.   CH was obligated at all times relevant herein to train and assure that its drivers were in compliance with 49 CFR 396.11, which required that Rogers complete a driver vehicle inspection report which, at a minimum, covered:

      (i)     Service brakes including trailer brake connections;
      (ii)    Parking brake;
      (iii)   Steering mechanism;
      (iv)   Lighting devices and reflectors;
      (v)    Tires;
      (vi)   Horn;
      (vii)  Windshield wipers;
      (viii) Rear vision mirrors;
      (ix)   Coupling devices;
      (x)    Wheels and rims;
      (xi)   Emergency equipment.

23. CH was obligated at all times relevant herein to train and assure that its drivers were in compliance with 49 CFR 396.11 requirements and that drivers such as Rogers identified vehicle defects and deficiencies and signed these reports which reflected defects and deficiencies.

24. CH was obligated at all times relevant herein to be in compliance with 49 CFR 396.11 requirements that their drivers such as Rogers were not permitted to operate the commercial vehicle until the identified defects and deficiencies were repaired.

25. CH was obligated at all times relevant herein, prior to permitting its drivers to operate their commercial vehicles, to certify on the driver vehicle inspection report listing any defect or deficiency that the defect or deficiency had been repaired or that repair is unnecessary before the vehicle is operated again.

26. CH was obligated, pursuant to 49 CFR 396.3, at all times relevant herein to systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles and intermodal equipment subject to its control.

27. This requirement included assuring that all parts and accessories of their commercial vehicles were in safe and proper operating condition at all times.

28. CH and Rogers were obligated, pursuant to 49 CFR 396.1, at all times relevant to be knowledgeable of and comply with all parts and subparts of the rules contained within 49 CFR 396.

29. Rogers was obligated, pursuant to 49 CFR 396.13, at all times relevant herein to refrain from operating CH commercial vehicles unless and until he was satisfied that the vehicles were in safe operating condition.

30. Rogers was obligated to assure that the service brakes on CH commercial vehicles he operated were functional prior to making trips.

31. Rogers was required, at all times relevant herein, to keep his CH commercial vehicle out of service if the vehicle had brakes which rendered the vehicle unsafe.

32. CH and Rogers both chose to violate their respective 49 CFR 396.25 obligations on May 15, 2019.

33. CH and Rogers were both required, at all times relevant herein, to assure that a 49 CFR 396.25 qualified brake inspector performed brake inspections, maintenance, service and repairs in situations where inspection, maintenance, service and/or repairs of the brakes was needed.

34. Upon information and belief, Rogers is not a 49 CFR 396.25 qualified brake inspector.

35. Following the tire blowout on Rogers' CH dump truck, CH did not assign a new fleet vehicle to Rogers. Instead, CH permitted Rogers to continue operating the same truck.

36. This decision was consistent with CH's pattern and practice of placing fleet vehicles with vehicle maintenance defects on public roadways.

37. Once the tire was replaced, Rogers either failed to perform an inspection of the vehicle or, in the alternative, proceeded to operate the vehicle with actual or constructive knowledge of its unsafe condition.

38. Rogers and CH knew or should have known that the tire blowout resulted in other residual damage to the truck.

39. Rogers and CH knew or should have known that the residual damage from the tire blowout to the truck included damage to the braking system on the truck.

40. CH permitted Rogers to operate their truck either:

    a. without receiving confirmation of its mechanical state or, in the alternative,

      b. with knowledge of its unsafe condition.

41. When Rogers proceeded on his trip following the tire replacement, he knew or should have known that the braking system on the truck was deficient.

42. A reasonably prudent commercial truck driver in a situation similar to that of Rogers would have tested the brakes, recognized their deficiency and placed the truck out of service.

43. The braking system on the CH truck was not entirely dysfunctional, as evidenced by the fact that Rogers proceeded to travel more than 50 miles from Nitro, West Virginia to Boyd County, Kentucky following the tire replacement and by the fact that the truck left evidence of braking on the roadway at the site of the subject crash in Boyd County, Kentucky.

44. However, the braking system was wholly inadequate and below federal safety standards.

45. Despite the defective braking on the truck, CH permitted Rogers to continue on his route.

46. CH and Rogers knew or in the exercise of ordinary care should have known that the operation of the CH dump truck with defective braking posed a substantial risk of crashes, severe injuries and death to innocent members of the roadway.

47. Rogers made no efforts to ground the truck and place it out of service at any time in his route from the tire replacement in Nitro, West Virginia to exit 181 on I-64 West in Boyd County, Kentucky.

48. Rather, it was the intention of Rogers to follow his directions from CH to proceed to his intended destination of Big Run Landfill.

49. Upon exiting I-64 West onto U.S. Highway 60, the inevitable consequences of

CH's and Rogers' poor choices became a reality. Rogers' truck did not stop, proceeded directly through a stop sign at a high speed and slammed into the pickup truck occupied by the Plaintiffs.

50. In addition to driving a knowingly defective and unsafe loaded dump truck, Rogers was also distracted. This is evidenced by numerous factors, including, but not limited to, his failure to attempt any evasive maneuvers to avoid the crash.

51. At the time of the crash, the weather was clear, Rogers had no visual obstructions and had a clear alternative path which, if taken, would have prevented the crash from occurring and which would have not resulted in any other vehicles being struck.

52. Brandon, the driver of the pickup truck slammed by the dump truck, was immobilized from the impact. He had to be rushed to Cabell Huntington's trauma center by helicopter for emergency surgery on his shattered legs and crushed ankle. He underwent extensive surgeries and remained in the hospital for eight days after being admitted. Alyssa, the passenger, was also rendered immobile from the impact. She was admitted into Cabell Huntington's trauma center with a shattered knee, broken toes and internal hemorrhaging. She remains wheelchair bound and has a long road to recovery.

## CAUSES OF ACTION

### Count One – Negligence, Gross Negligence (Rogers)

53. The Plaintiffs re-allege the allegations above and incorporate the same by reference herein.

54. Rogers breached his duties of reasonable care owed to members of the roadway, including the Plaintiffs, with each breach serving as a direct and proximate cause of the Plaintiffs' injuries and damages.

55. Rogers' conduct was negligent, reckless, grossly negligent, malicious, careless,

willful and wanton.

56. Rogers' breaches of duties owed to the Plaintiffs included, but were not limited to, the following:

    a. To use the degree of care, skill and judgment which a reasonable driver would exercise in the same or similar circumstances;

    b. To drive at a speed no greater than was reasonable and prudent, having regard for the traffic and use of the highway;

    c. To reduce speed when approaching a stop sign and stop for the stop sign;

    d. To yield the right of way at the intersection to Plaintiffs;

    e. To not enter an intersection against a stop sign when traffic was present in the intended line of travel;

    f. To keep a lookout ahead for persons or vehicles in front of him or near his intended line of travel as to be in danger of collision;

    g. To drive without distraction;

    h. To sound a horn as a warning;

    i. To yield the right of way to the Plaintiffs;

    j. To have the truck under reasonable control;

    k. To exercise ordinary care to assure that the braking system was checked and maintained in good working order; and

    l. To comply with the rules set forth in the CDL manual governing his CDL licensure.

### Count Two – Negligence, Gross Negligence (CH)

57. The Plaintiffs re-allege the allegations above and incorporate the same by reference

herein.

58. CH breached its duties of reasonable care owed to members of the roadway, including the Plaintiffs, and each breach served as a direct and proximate causes of the Plaintiffs' injuries and damages.

59. CH's conduct was negligent, reckless, grossly negligent, malicious, careless, willful and wanton.

60. The duties which were breached include, but are not limited to:

   a. Maintaining safe fleet vehicles which met minimum safety standards for operation;

   b. Placing fleet vehicles out of service when they failed to meet minimum safety standards;

   c. Keeping unsafe vehicles out of service until reasonable assurance is provided that the vehicles are safe for operation and meet minimum safety standards;

   d. Performing routine maintenance and inspection on their fleet;

   e. Placing reasonable expectations upon drivers which do not encourage unsafe, risky, distracted or fatigued driving;

   f. Taking reasonable precautions to assure that drivers are not dispatched on trips in vehicles which pose unreasonable risks of safety hazards and crashes;

   g. Placing the subject dump truck out of service upon receiving notice of the tire blowout;

   h. Assuring that, as a motor carrier, proper maintenance and repair of the dump truck being driven by Rogers at the time of the subject crash was performed and that the repairs were certified prior to the truck being placed back in service;

    i. Providing a replacement truck to Rogers upon learning of the blowout and/or other collateral damage;

    j. Cancelling or postponing the scheduled trip for Rogers in the unsafe dump truck until 49 CFR 396.25 certification was provided that the brakes were of sound repair and compliant with 49 CFR 396, generally;

    k. Placing the dump truck out of service once notice was given that the truck was not adequately repaired; and

    l. Exercising ordinary care, generally, to assure that the braking system was checked and maintained in good working order.

### Count Three – Negligence Per Se (Rogers)

61. The Plaintiffs re-allege the allegations above and incorporate the same by reference herein.

62. That, pursuant to KRS 446.070, *"person[s] injured by the violation of any statute may recover from the offender such damages as [they] sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."*

63. That Rogers violated KRS 189.090, 189.290, 189.330 and other relevant statutes, each of which are designed to prevent crashes such as the one which occurred in this case.

64. At all times relevant herein, Defendant Rogers was required to comply with 601 KAR 1:005 and, as such, the Defendant had a duty to comply with the Federal Motor Carrier Safety Regulations and Transportation Security Administration Regulations: 49 C.F.R. 40, 49 C.F.R. 300—399 and 49 C.F.R. 1572. Defendant Rogers violated multiple provisions of these regulations, including, but not limited to, 49 CFR 392.7, 396.1, 396.3, 396.7, 396.11, 396.13 and 396.25, each of which were promulgated to prevent crashes similar to the subject crash, and said violations were

11

direct and proximate causes of the subject crash and resulting damages.

65. The Plaintiffs are in the class of persons intended to be protected by the statutes and regulations violated by Rogers.

66. That Defendant Rogers' violations of the referenced statutes and regulations were direct and proximate causes of the subject crash and resultant damages to each of the Plaintiffs, Brandon and Alyssa Binion.

67. In addition to the statutory and regulatory violations identified above, the Plaintiffs reserve the right to allege additional statutory and regulatory violations as those violations are discovered through the course of discovery.

### Count Four – Negligence Per Se (CH)

68. The Plaintiffs re-allege the allegations above and incorporate the same by reference herein.

69. That, pursuant to KRS 446.070, *"person[s] injured by the violation of any statute may recover from the offender such damages as [they] sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."*

70. Plaintiffs belong to the class of persons that these safety regulations were intended to protect, and the personal injuries and damages sustained by the Plaintiffs were the types of injuries against which the safety regulations were intended to protect.

71. At all times relevant herein, Defendant CH was required to comply with 601 KAR 1:005 and, as such, the Defendant had a duty to comply with the Federal Motor Carrier Safety Regulations and Transportation Security Administration Regulations: 49 C.F.R. 40, 49 C.F.R. 300—399 and 49 C.F.R. 1572. That Defendant CH violated multiple provisions of these regulations, including, but not limited to, 49 CFR 392.7, 393.40, 393.42, 393.48, 393.52, 396.1,

396.3, 396.7, 396.11, 396.12 and 396.25, each of which were promulgated to prevent crashes similar to the subject crash, and said violations were direct and proximate causes of the subject crash and resulting damages.

72. In addition to the regulatory violations identified above, the Plaintiffs reserve the right to allege additional statutory and regulatory violations as those violations are discovered through the course of discovery.

### **Count Five - Negligent Hiring, Training, Retention, and Supervision (CH)**

73. The Plaintiffs re-allege the allegations above and incorporate the same by reference herein.

74. That CH negligently hired, trained, supervised and/or retained Rogers, and these actions served as direct and proximate causes to the subject crash and resultant damages.

### **Count Six – Vicarious Liability & Respondeat Superior (CH)**

75. The Plaintiffs re-allege the allegations above and incorporate the same by reference herein.

76. That CH is liable for the conduct of their employees, agents, and those driving under their authority and/or operating their equipment; who, while acting within the scope of their employment commit tortious acts resulting in damages.

77. The negligence, carelessness, gross negligence, recklessness, negligence per se and/or wrongful acts of Rogers are imputed to CH. CH is vicariously liable to the Plaintiffs for Rogers' actions and are also liable under the doctrine of respondeat superior.

### **Count Seven - Punitive Damages (CH & Rogers)**

78. The Plaintiffs re-allege the allegations above and incorporate the same by reference herein.

79. That the conduct of CH and Rogers herein, both jointly and severally, constituted a flagrant disregard for the rights, lives and safety of others, including the Plaintiffs, Brandon and Alyssa Binion with a subjective awareness that such conduct would likely result in human death and/or bodily harm.

80. That CH herein authorized, ratified and/or should have anticipated the conduct of Joel Rogers and/or other employees which were in violation of KRS 411.184 and KRS 411.186.

81. That, pursuant to common law, KRS 411.184, and KRS 411.186, the Plaintiffs, Brandon and Alyssa Binion, are each entitled to punitive damages from CH and Rogers.

### Damages Common to all Counts (Brandon Binion)

82. Plaintiff Brandon Binion is entitled to damages from the Defendants, which include, but are not limited to:

    a. Past medical expenses;

    b. Future medical expenses;

    c. Past wage loss;

    d. Future lost wages/permanent impairment of the power to labor and earn income;

    e. Past physical pain, suffering, and inconvenience;

    f. Future physical pain, suffering, and inconvenience;

    g. Past and future emotional suffering, inconvenience and mental anguish;

    h. Damages associated with the increased risk for future injuries, damages and associated mental anguish;

      i. Incidental and consequential damages including, but not limited to, replacement services, vocational rehabilitation, school expenses and job training;

      j. Miscellaneous out of pocket expenses, both past and future, including, but not limited to, transportation costs, medical equipment, and accommodations to the home; and,

      k. Any and all other damages to which Brandon Binion is entitled with regard to any claim, to specifically include, but not be limited to, punitive damages, prejudgment and post-judgment interest and the expenses associated with pursuing this action.

**Damages Common to all Counts (Alyssa Binion)**

83. Plaintiff Alyssa Binion is entitled to damages from the Defendants, which include, but are not limited to:

      a. Past medical expenses;

      b. Future medical expenses;

      c. Past wage loss;

      d. Future lost wages/permanent impairment of the power to labor and earn income;

      e. Past physical pain, suffering, and inconvenience;

      f. Future physical pain, suffering, and inconvenience;

      g. Past and future emotional suffering, inconvenience and mental anguish;

      h. Damages associated with the increased risk for future injuries, damages and associated mental anguish;

  i. Incidental and consequential damages including, but not limited to, replacement services, vocational rehabilitation, school expenses and job training;

  j. Miscellaneous out of pocket expenses, both past and future, including, but not limited to, transportation costs, medical equipment, and accommodations to the home; and,

  k. Any and all other damages to which Alyssa Binion is entitled with regard to any claim, to specifically include, but not be limited to, punitive damages, prejudgment and post-judgment interest and the expenses associated with pursuing this action.

**WHEREFORE**, Plaintiffs, by counsel, demand as follows:

1. That the Clerk of this Court issue Summons to each Defendant herein.

2. Judgment for the Plaintiffs against the Defendants, jointly and severally, for a fair and reasonable amount for all damages to which the Plaintiffs are entitled, including both compensatory and punitive damages.

3. Prejudgment and post-judgment interest.

4. The costs of pursuing this action.

5. Trial by jury; and

6. All just and proper relief to which each of the Plaintiffs may appear to be entitled from the Defendants, including the right to amend this Complaint.

Respectfully Submitted,

**SAM AGUIAR INJURY LAWYERS, PLLC**

/s/ *Jonathan B. Hollan*
Sam Aguiar
Jonathan B. Hollan
1201 Story Avenue, Suite 301
Louisville, KY 40206
Telephone: (502) 400-6969
Facsimile: (502) 491-3946
sam@kylawoffie.com
jhollan@kylawoffice.com
*Co-Counsel for Plaintiffs*

*-and-*

Jeremy Clark
2706 Louisa Street
Catlettsburg, KY 41129
Telephone: (606) 739-6774
jeremy6uk@gmail.com
*Co-Counsel for Plaintiffs*

17